IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. 2:11-cv-02958-RMG |
| v. ) | |
| ) | |
| STATE OF SOUTH CAROLINA and ) | |
| NIKKI R. HALEY, in her official capacity ) | |
| as the Governor of South Carolina, ) | |
| ) | |
| Defendants. ) | |
| ) | |

### RESPONSE BY UNITED STATES OF AMERICA TO
### MEMORANDUM OF DEFENDANTS ON LIMITED REMAND

Plaintiff United States of America, by its undersigned counsel, submits this response to the Memorandum of Defendants on Limited Remand (ECF No. 105), pursuant to this Court's Orders of August 17 and 22, 2012 (ECF Nos. 100, 102).

1. Defendants' arguments regarding the effect of *Arizona v. United States*, 132 S. Ct. 2492 (2012), on this Court's preliminary injunction order, *U.S. v. South Carolina*, 840 F. Supp. 2d 898 (D.S.C. 2011), give the *Arizona* decision a far too narrow reading. Further, although defendants address the effect of *Arizona* as required by this Court's Orders, they also cite other authorities and make new arguments, such that their memorandum partly constitutes a motion for reconsideration of the preliminary injunction. Nevertheless, those authorities and arguments either do not support their position or actually support the position of the United States.

2. In *Arizona*, the United States challenged four provisions of that State's immigration law, and the Supreme Court held that three of those provisions were preempted. Despite the

resounding affirmation of federal control of immigration policy in *Arizona*, and despite defendants' own admission that the provisions considered in *Arizona* "are similar to two South Carolina provisions at issue in the instant case" (ECF No. 105 at 2), defendants do not now concede that the *Arizona* decision compels or even supports enjoining *any* provision of Act 69. Defendants' unwillingness to give any quarter is a consequence of their unduly narrow interpretation of *Arizona*. In reality, the *Arizona* decision strengthens the position of the United States in this action in nearly every respect.

3. <u>Section 4 – Transportation/harboring</u>. Defendants assert that the Supreme Court in *Arizona* "did not address harboring provisions" and that they "stand by" their earlier arguments in opposing the United States' motion for preliminary injunction as to Section 4 of Act 69 (ECF No. 105 at 9-10). On this basis, they ask the Court to dissolve the preliminary injunction against Section 4 (ECF No. 105 at 8). This Court, however, has rejected defendants' earlier arguments regarding that provision. *See* 840 F. Supp. 2d at 915-17, 919. Moreover, although the Supreme Court did not specifically address a transportation/harboring provision in *Arizona*, the reasoning in the Court's decision substantially strengthens the United States' challenge to Section 4, as discussed in the plaintiff's supplemental memorandum on remand (ECF No. 107 at 10-12).[1]

4. <u>Section 5 – Failure to carry registration documents</u>. Although the Supreme Court in *Arizona* addressed a failure-to-carry provision (and held it constitutionally preempted), defendants seek to avoid the effect of that decision here by asserting that Section 5 of Act 69 is "narrower" than the corresponding Arizona provision, notwithstanding their concession that

---

[1] Defendants acknowledge that the Eleventh Circuit and the District of Arizona have more recently enjoined provisions "similar" to portions of Section 4 (ECF No. 105 at 10), thus further supporting the position of the United States.

Section 5 is "similar" (ECF No. 105 at 12, 13).  Defendants assert that Section 5 differs from the Arizona statute in two respects:

- The Arizona provision criminalized both failure to carry and failure to "complete . . . an alien registration document," whereas Section 5 "does not refer . . . to the completion of a certificate" (ECF No. 105 at 12-13).[2]  The Supreme Court held in *Arizona*, however, that the federal government has "occupied the field of alien registration", 132 S. Ct. at 2502, such that *any* state foray into this area, whether regarding the completion or the carrying of alien registration documents, is equally preempted.[3]

- Unlike Section 5, the Arizona provision did not permit probation, which, defendants assert, "the Supreme Court found to be intrusive on the Federal scheme" (ECF No. 105 at 12 n.7).[4]  The penalty language in the Arizona provision was not, however, necessary to the Court's holding of preemption.  The Court first held that the Arizona statute was preempted because "the Federal Government has occupied the field of alien registration", then held that the difference in penalties was merely "a further intrusion upon the federal scheme" that "simply underscore[d] the reason for field preemption."  *Id*. at 2502-03.

Thus, Section 5 is not "narrower" than the failure-to-carry provision struck down in *Arizona*;

---

[2] Defendants also point out that the Arizona statute "refer[s]" to 8 U.S.C. § 1306(a), whereas Section 5 does not (ECF No. 105 at 13).  That, however, is simply another way of saying that the Arizona provision, but not the South Carolina provision, criminalizes failure to register, since § 1306 criminalizes failure to register and § 1304 (which Section 5 *does* "refer to") criminalizes failure to carry registration.

[3] The *Arizona* Court's observation that federal law at the time of *Hines v. Davidowitz*, 312 U.S. 52 (1941), "did not require aliens to carry identification cards", but was nonetheless "a single integrated and all-embracing system", 132 S. Ct. at 2501, further establishes that the federal government's occupation of this field prevents the States from criminalizing failure to carry.

[4] Defendants say the Arizona statute "removed the possibility of probation *or parole*" (ECF No. 105 at 12 n.7, emphasis added), but there is nothing in the *Arizona* decision about parole.

3

indeed, it is broader (ECF No. 107 at 9).  In any event, as noted already, the Supreme Court held in *Arizona* that the United States "occupies [the] entire field [of] alien registration", such that *any* state regulation in this area is "impermissible," 132 S. Ct. at 2502 – whether broader or narrower than the Arizona provision.  Section 5 of Act 69 must, therefore, be enjoined for the reasons stated in *Arizona* and in the United States' supplemental memorandum (ECF No. 107 at 8-10).

     5.  <u>Section 6 – Possession or use of false identification</u>.  Defendants assert that the provision in Section 6 of Act 69 that criminalizes possession or use of false identification addresses "ordinary fraud," a field which the federal government has "not occupied," rather than the field of alien registration (ECF No. 105 at 11).  First, this is not an argument regarding the effect of the *Arizona* decision on this Court's preliminary injunction order.  Second, this provision does not merely address "ordinary fraud"; that is addressed elsewhere in pre-existing South Carolina statutes.  *See, e.g.,* S.C. Code §§ 16-13-230 (breach of trust with fraudulent intent), 16-13-320 (swindling), 16-13-450 (unlawful issuance or sale of identification card), 16-13-510 (identity fraud).  This provision of Section 6 is very specifically directed at aliens who may "offer[] proof of [their] lawful presence in the United States."  *See* S.C. Act No. 69 § 6 (adding S.C. Code § 17-13-170(A)(2)).  Moreover, a federal statute on the same subject, 8 U.S.C. § 1324c – a "Federal counterpart," according to the defendants (ECF No. 105 at 11) – is contained in the Immigration and Nationality Act, further confirming that this subject is within "the field of alien registration" occupied by the federal government.  *See Arizona*, 132 S. Ct. at 2502-03.[5]

---

[5] Defendants do not address the effect of the *Arizona* decision on this Court's approach to Section 15 of Act 69, which makes it a felony "to make, issue, or sell, or offer to make, issue, or sell" a false picture identification for use by an unlawfully present alien.  *Arizona* strongly confirms this Court's conclusion that the United States is likely to succeed in its challenge to Section 15.  *See* 840 F. Supp. 2d at 918-19.

4

6. <u>Section 6 – Immigration status verification</u>. The United States does not oppose defendants' assertion that this Court should dissolve its existing injunction as to the immigration status verification provision in Section 6 of Act 69 (ECF No. 105 at 5-8), provided that it is interpreted and applied narrowly as suggested by the Supreme Court's decision in *Arizona* (ECF No. 107 at 12-13). Nevertheless, as stated in its supplemental memorandum and as contemplated by *Arizona*, the United States reserves the right to continue challenging this provision if its intended scope or enforcement by the State, or its interpretation by state courts, interferes with the administration of federal immigration laws (ECF No. 107 at 2, 13).

7. Defendants assert, lastly, that this Court's injunction should be dissolved because "a facial, preenforcement attack upon [a state] statute may undermine principles of federalism" (ECF No. 105 at 13). In support of that proposition, they cite the Supreme Court's discussion regarding Arizona's immigration status verification statute, which the Court declined to enjoin in the context of a facial challenge. *See* 132 S. Ct. at 2510. That concept did not, however, prevent the Court from holding that all of the other Arizona provisions it considered – including both of the criminal provisions – were preempted.

\* \* \*

Accordingly, the reasoning of this Court's order preliminarily enjoining Sections 4 and 5 of Act 69, and that portion of Section 6 regarding the use of false identification, should be modified to reflect the Supreme Court's decision in *Arizona v. United States*, but the preliminary injunction as to those provisions should not be disturbed. Additionally, the reasoning of the Court's preliminary injunction order regarding the likelihood of plaintiff's success in challenging Section 15 of Act 69 should also be modified to reflect the decision in *Arizona*.

The *Arizona* decision requires modification of this Court's preliminary injunction regarding the immigration status verification provision in Section 6 of Act 69, provided that provision is narrowly construed.

Respectfully submitted,

STUART F. DELERY
Acting Assistant Attorney General


s/William N. Nettles
WILLIAM N. NETTLES (I.D. #6586)
United States Attorney
Wells Fargo Building
1441 Main Street Suite 500
Columbia, South Carolina 29201
Telephone:     (803) 929-3005
Facsimile:     (803) 254-2912
E-mail:        bill.nettles@usdoj.gov

BARBARA M. BOWENS (I.D. #4004)
Civil Chief

ARTHUR R. GOLDBERG
Assistant Director

W. SCOTT SIMPSON
Senior Trial Counsel

Attorneys, Department of Justice
Civil Division, Room 7210
Post Office Box 883
Washington, D.C. 20044
Telephone:     (202) 514-3495
Facsimile:     (202) 616-8470
E-mail:        scott.simpson@usdoj.gov

COUNSEL FOR PLAINTIFF
UNITED STATES OF AMERICA

Dated:  October 10, 2012